1
2
3
4
5

JOSEPH H. HARRINGTON
Acting United States Attorney
Eastern District of Washington
*Rudy J. Verschoor*
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone:  (509) 353-2767

6
7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

8
9
10
11
12

JOSE VERA,

                          Plaintiff,

            vs.

U.S. DEPARTMENT OF INTERIOR
BUREAU OF INDIAN AFFAIRS, and
the UNITED STATES OF AMERICA,

                          Defendants.

1:17-cv-03005-RMP

**DEFENDANTS' MOTION TO DISMISS**

*Hearing Without Oral Argument:
July 14, 2017 at 6:30 p.m.*

13
14
15
16
17

        Defendants United States of America and the Bureau of Indian Affairs (BIA),

by and through their counsel of record, Joseph H. Harrington, Acting United States

Attorney for the Eastern District of Washington and the undersigned Assistant United

States Attorney, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6),

hereby seek an order dismissing this action.

18

## I.        INTRODUCTION

19
20
21
22
23
24
25
26

        Plaintiff Jose Vera brings this action pursuant to the Federal Tort Claims Act

(FTCA) alleging that he was injured while driving a logging truck on Bureau of

Indian Affairs (BIA) Road 140 on the Yakama Indian Reservation.  Plaintiff alleges

two counts:  (1) Negligence and Failure to Warn, and (2) Failure to Warn.  *Complaint*,

¶¶ 4.1-4.4 and 5.1-5.4 (ECF No. 1).  The Complaint must be dismissed because this

Court lacks jurisdiction to hear the claims and some of the claims fail to state a valid

claim upon which relief may be granted.

27
28

DEFENDANTS' MOTION TO DISMISS - 1

## II.    <u>STANDARD FOR DISMISSAL UNDER RULES 12(b)(1) and 12(b)(6)</u>

Defendants seeks dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) – lack of subject matter jurisdiction.  On a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party.  *Wyler Summit Partnership v. Turner Broadcasting System, Inc*., 135 F.3d 658, 661 (9th Cir. 1998).  A court addressing a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) is not restricted to the face of the pleadings.  *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Land v. Dollar*, 330 U.S. 731, 735 n.4, 67 S.Ct. 1009 (1947), *overrule on other grounds*, *Larson v. Domestic & Foreign Commerce Corp*., 337 U.S. 682, 69 S.Ct. 1457 (1949).  Rather, the court may consider declarations or other evidence to resolve factual questions bearing on the jurisdictional issue without converting the motion into one for summary judgment.  *Id*.  While a court generally assumes the factual allegations to be true, a court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations.  *Western Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) (citations omitted). "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." *Robinson*, 586 F.3d at 685, *citing Rattlesnake Coal v. E.P.A.*, 509 F.3d 1095, 1102 n.2 (9th Cir. 2007).

Defendant also seeks dismissal of some claims in the Complaint because they do not state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  "A motion to dismiss under Fed. R. Civ. P. 12(b)(6) to dismiss for failure to state a claim can be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim." *Jablon v. Dean Witter & Co*., 614 F.2d 677, 682 (9th Cir. 1980) (*citing Conley v. Gibson*, 355 U.S. 41 (1957)).  On a motion to dismiss, the court presumes that the facts alleged by the plaintiff are true.  *Halet v. Wend Inv. Co*., 672 F.2d 1305, 1309 (9th Cir. 1982).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.    **FACTUAL BACKGROUND**

Yakima Forest Products had entered into a Timber Sale Contract with the Yakama Nation.  On January 27, 2014, Plaintiff Jose Vera was driving a load of logs from the site of the timber harvesting.  *Complaint*, ¶ 2.1 (ECF No. 1).  Plaintiff was on Signal Peak Road[1] in the Closed Area of the Yakama Indian Reservation at approximately milepost 20 when he failed to negotiate a curve.  *Id*.  The logging truck being driven by Plaintiff crashed and Plaintiff's passenger was killed in that accident. *Id*., ¶ 2.3.

### IV.    LEGAL ANALYSIS

#### A.    The Bureau of Indian Affairs Is Not a Proper Defendant.

Plaintiff named, as one of the Defendants, the Bureau of Indian Affairs (BIA), an agency within the U.S. Department of Interior.  The United States is the only proper defendant in a FTCA case.  28 U.S.C. § 1346(b)(1); *FDIC v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998); *Woods v. United States*, 720 F.2d 1451, 1452 n.1 (9th Cir. 1983).  A federal agency is not a proper defendant under the FTCA.  *Kennedy v. United States Postal Service*, 145 F.3d 1077, 1078 (9th Cir. 1998).  Because the Bureau of Indian Affairs, a government agency is not a proper defendant in this case, the Court should dismiss the Bureau of Indian Affairs from this action.

#### B.    The FTCA Does Not Contemplate a Lawsuit Against the United States Based on Alleged Wrongdoing by an Indian Tribe.

Plaintiff here seeks to hold the United States liable for alleged negligence regarding the design, construction, maintenance of the Signal Peak Road.  However, since at least 1990, that portion of the Signal Peak Road on which Plaintiff's accident

---

[1] The BIA refers to this road as "Signal Peak Road" for that portion of the road in the Closed Area of the Yakama Indian Reservation, and refers to it as "BIA Road # 140" in the Open portion of the Reservation.  *Declaration of Kurt Fredenberg*, ¶ 12.

DEFENDANTS' MOTION TO DISMISS - 3

occurred has been in exclusive control of the Yakama Nation.  After the Yakama Nation closed that portion of the Yakama Indian Reservation[2], that portion of Signal Peak Road within the Closed Area was removed from the National Tribal Transportation Facility Inventory (NTTFI).[3]  Upon removal from the NTTFI, no Federal transportation or road maintenance funds available to the BIA could be spent on that portion of Signal Peak Road, and in fact, no such funds were expended on that portion of the road.  Thus, the proper defendant in Plaintiff's lawsuit is not the United States or BIA, but rather, the Yakama Nation.

"Section 1345(b)(1), the Federal Tort Claims Act, waives the United States' sovereign immunity in a defined category of cases involving negligence committed by federal employees in the course of their employment." *Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1018 (9th Cir. 2007).  Here, the United States and BIA were not involved in the maintenance or control of the Signal Peak Road since at least

---

[2] The Closed Area, which makes up about 2/3 of the 1.3 million acre reservation, has been closed to the general public since 1972. *Brendale v. Confederated Tribes and Bands of the Yakama Indian Nation*, 492 U.S. 408, 415 (1989).

[3] A "tribal transportation facility" is defined under Federal law as "a public . . . road . . . that is located on or provides access to tribal land and appears on the national tribal transportation facility inventory described in [23 USC] 202 (b)(1)."  23 USC 101 (a)(30).  A "public road means any road or street under the jurisdiction of and maintained by a public authority and open to public travel."  23 USC 101 (a)(22).  Only facilities appearing on the NTTFI are "eligible for assistance" (funding) for construction or maintenance activities.  23 USC 202 (b)(1)(A).  Finally, a "public authority" is defined as a "Federal, State, county, town, or township, Indian tribe, municipal or other local government or instrumentality with authority to finance, build, operate, or maintain toll or toll-free facilities."  23 USC 101 (a)(21).

DEFENDANTS' MOTION TO DISMISS - 4

1990.  Rather, the Yakama Nation had assumed all responsibility for that road more than two decades ago.

### 1. *Background on the Closed Area of the Reservation*.

In 1990, the Yakama Nation passed a tribal resolution that confirmed its prior closure of a large part of the Yakama Indian Reservation.  *Declaration of Kurt Fredenberg*, Ex. 2 (Tribal Resolution T-166-90).  In that resolution, the Yakama Nation took over access to the Close Area and took control of roads within the Closed Area by placing a moratorium on "the use of BIA funds for construction, operation and maintenance of roads within the Closed Area of the Yakama Indian Reservation." *Id*., Ex. 2.  That portion of Signal Peak Road where Plaintiff had his accident (approximately milepost 20) is within the Closed Area.  *Fredenberg Decl*., ¶¶ 13; 15.

In 1991, the Yakama Nation passed another resolution (T-113-91) whereby the Yakama Nation accepted the BIA's relinquishment of all BIA rights of way and easements over roads and bridges in the Closed Area of the Yakama Indian Reservation.  *Fredenberg Decl*., Ex. 3.  Thus, the portion of the Signal Peak Road where the subject accident occurred became the sole responsibility of the Yakama Nation.

The Yakama Nation passed another resolution (T-190-96) which stated that only non-federal, unrestricted Tribal funds were being expended on roads in the Closed Area.  *Fredenberg Decl*., Ex. 4.  That resolution allowed Federal funds available to the BIA to be spent on the eastern portion of Signal Peak Road (approximately 12 miles).  *Id*., ¶ 20.  But the area where the subject accident occurred is to the west of this segment of Signal Peak Road, and thus, this is further evidence that Federal funds were not being used on the segment of road on which the subject accident occurred.  *Fredenberg Decl*. ¶¶ 15-16; 18-19.

DEFENDANTS' MOTION TO DISMISS - 5

### 2. *The Yakama Nation's Power to Close the Reservation*.

There is no dispute that the Yakama Nation can control the Reservation in this manner. *Brendale*, 492 U.S. at 431-433 (Yakama Nation has authority to control development on fee land owned by non-Indian through zoning in Closed Area of the Reservation). "Indian tribes retain the powers of a sovereign nation in the limited realm of internal affairs, subject to Congress's power completely to divest the tribes of such sovereignty." *United States v. Long*, 324 F.3d 475, 479 (7th Cir. 2003). The United States policy has been to further Indian self-governance. *Morton v. Mancari*, 417 U.S. 535, 551, 94 S.Ct. 2472 (1974). "Indian tribes are distinct, independent political communities, retaining their original natural rights in matters of local self-government." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 55 (1978).

Tribal sovereignty has been retained with respect to the exercise of tribal power in a number of areas. See, *Plains Commerce Bank v. Long Family Land and Cattle Co*., 554 U.S. 316, 327, 128 S.Ct. 2709 (2008) (tribes retain power to legislate and to tax activities on the reservation); *United States v. Wheeler*, 435 U.S. 313, 323, 98 S.Ct. 1079 (1978) (tribes retain power to exercise criminal jurisdiction over tribal members); *Fisher v. District Court of Sixteenth Judicial Dist. Of Mont*., 424 U.S. 382, 387-88, 96 S.Ct. 943 (1976) (tribes retain power to regulate domestic relations among members); *United States v. Mazurie*, 419 U.S. 544, 557, 95 S.Ct. 710 (1975) (Indian tribes are a "separate people" possessing the power of regulating their internal and social relations), citing *United States v. Kagama*, 118 U.S. 375, 381-82, 6 S.Ct. 1109 (1886); *Brendale*, 492 U.S. at 443-444 (tribe can impose zoning regulations on the 3.1 percent of reservation not owned by Yakama Tribe); *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 137, 142, 102 S.Ct. 894 (1982) (tribe has taxing authority over tribal lands leased by nonmembers). Tribal sovereignty and self-governance includes immunity from suit. *Kiowa Tribe of Okla. v. Mfg. Techs., Inc*., 523 U.S. 751, 756-58, 118 S.Ct. 1700 (1998); *Santa Clara Pueblo*, 436 U.S. at 58. In general, Indian tribes

DEFENDANTS' MOTION TO DISMISS - 6

retain the right to make their own laws and be governed by them. *Nevada v. Hicks*, 533 U.S. 353, 361 (2001).

Neither the Yakama Nation nor their road maintenance departments are an arm of the federal government. *See*, *EEOC v. Karuk Tribe Housing Authority*, 260 F.3d 1071, 1080 (9th Cir. 2001) (tribal housing authority functions as an arm of tribal government and occupies a role quintessentially related to self-governance); *Enas*, 255 F.3d at 664 (tribal court was not acting as an arm of the federal government in prosecuting non-member Indian); *Wheeler*, 435 U.S. at 322 (Navajo Tribe that punished its own member does so as part of its retained sovereignty, not as an arm of the Federal Government); *United States v. Elk*, 561 F.2d 133, 135 (8th Cir. 1977) (tribal court exercising residual jurisdiction not acting as an arm of the federal government); *United States v. Karlen*, 476 F.Supp. 306, 310 (D.S.D. 1979) (in civil action, counterclaim against Indian tribe not allowed where actions of tribe were not actions of the United States). The Yakama Nation's inherent sovereignty is also a reflection of Congress's intent to make Indian tribes more independent through the passage of the Indian Reorganization Act of 1934 (codified at 25 U.S.C. § 5101 et. seq.), also known as the Wheeler-Howard Act. That Act allowed Indian tribes to organize and adopt tribal constitutions and by-laws. Following the passage of the Indian Reorganization Act, Indian tribes formed tribal councils, formed tribal courts, hired their own attorneys, and formed corporations. Indian tribes today, including the Yakama Nation, have their own independent government that controls internal affairs of the Tribes and the United States operates in a government-to-government relationship with Indian tribes.

### 3. *The United States is Not the Proper Defendant*.

Given this backdrop, it is beyond dispute that the Yakama Nation was responsible for any maintenance, repair, or installation of safety features on the Signal Peak Road in the Closed Area where Plaintiff's accident occurred. As such, the United States is not the proper defendant in this action, and the Court should dismiss the United States from the action completely.

DEFENDANTS' MOTION TO DISMISS - 7

While not specifically raised in Plaintiff's Complaint, the United States would like to point out that the United States cannot be found vicariously liable under the FTCA for the Yakama Nation's road improvement and maintenance decisions in the closed area.  The Indian Self-Determination and Education Assistance Act (ISDEAA), allows tribes and tribal organization to enter into contracts with the BIA for services that the BIA would otherwise provide ("638 Contract").  Pub. L. No. 93-638, § 1017, 88 Stat. 2203 (1975).  FTCA coverage extends to Indian tribes and tribal organizations carrying out 638 Contracts. 25 U.S.C. § 5321(c); 25 C.F.R. Part 900 Subpart M. However, the BIA does not have a 638 Contract with the Yakama Nation for road improvements or road maintenance in the Closed Area of the Yakama Indian Reservation, and no 638 Contract money can be spent for that purpose.  *Fredenberg Declaration,* ¶ 19-20.  Consequently, the United States cannot be found vicariously liable for tribal employee acts or omissions to act respecting closed road segment improvements or maintenance. *See also, Logue v. United States*, 412 U.S. 521, 531-32 (1973) (government cannot be held liable under the FTCA for act of those that are not federal employees).

In the event the Court believes that the Yakama Nation is not the proper Defendant in this case and that the United States is a proper Defendant, the Court lacks subject matter jurisdiction over the claims raised in the Complaint.  The specific claims are addressed below.

### C.    Plaintiff's Claims of Negligence and Failure to Warn Must Be Dismissed.

The Complaint in this matter alleges two counts:  (1) Negligence and Failure to Warn and (2) Failure to Warn.  ECF No. 1 at 3-4.  In the Complaint, Plaintiff alleges the following specific acts or omissions by the United States:  (1) Failure to warn of a dangerous curve (¶ 2.2; 4.3; 5.2); (2) Failure to install guardrails (¶ 2.2; 4.3; 5.2); (3) Design of the road is unreasonably dangerous (¶ 2.2; 4.3); and (4) Failure to maintain

1

or repair the road (¶ 4.2).  Each of these is addressed below and each must be

2

dismissed.

3

### 1. *Plaintiff Has Not Properly Pleaded a Claim of Failure to Maintain or Repair*.

4

Paragraphs 4.2 and 4.3 of the Complaint alleged that Defendant failed to

5

exercise reasonable care in the maintenance and repair of [BIA Road 140][4].  However,

6

the Complaint fails to allege any specific act or omission related to either maintenance

7

or repair of BIA Road 140, and therefore, does not state a valid cause of action.  The

8

Complaint also fails to identify a federal actor who was allegedly negligent.

9

While notice pleading only requires a plaintiff to provide a "short and plain

10

statement of the claiming showing that the pleader is entitled to relief," this Plaintiff

11

has failed to meet that burden.  "Rule 8 marks a notable and generous departure from

12

the hyper-technical, code-pleading regime of a prior error, but it does not unlock the

13

doors of discovery for a plaintiff armed with nothing more than conclusions."

14

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (Souter, J., dissenting).  However, "[a]

15

pleading that offers labels and conclusions and a formulaic recitation of the elements

16

of a cause of action will not do."  *Id*. (internal quotations and citation omitted).  "Nor

17

does a complaint suffice if it tenders "naked assertions" devoid of "further factual

18

enhancement.""  *Id*. (citation omitted).  "To survive a motion to dismiss, a complaint

19

must contain sufficient factual matter, accepted as true, to state a claim to relief that is

20

plausible on its face."  *Id*. at 678, *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S.

21

544, 570, 127 S.Ct. 1955 (2007).  "The plausibility standard is not akin to a

22

"probability requirement," but it asks for more than a sheer possibility that a defendant

23

acted unlawfully.  *Id*. (internal citations and quotations omitted).

24

25

[4] Paragraph 4.3 of the Complaint does not specifically mention BIA Road # 140, but

26

makes reference to "South 116th Street" and the "dead-end" which are not part of the

27

Signal Peak Road or BIA Road # 140.

28

DEFENDANTS' MOTION TO DISMISS - 9

The Ninth Circuit, in discussing the pleading requirements established in *Iqbal* reiterated, "… the facts alleged in a complaint must state a claim that is plausible on its face." *Moss v. U.S. Secret Service*, 572 F.3d 962, 972 (9th Cir. 2009).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678.

Here, Plaintiff has done nothing more than *allude* to a cause of action (failure to maintain or repair) without providing any factual enhancement that would make such a claim plausible on its face.  *Iqbal*, 556 U.S. at 678.  Recall that under Washington law (which is applied in an FTCA case brought in Washington), to recover on a claim of negligence, a plaintiff must show (1) the existence of a duty to the plaintiff; (2) breach of that duty; (3) causation in fact; (4) legal causation; and (5) a resultant injury. *Lowman v. Wilbur*, 178 Wash. 2d 165, 169 (Wash. 2013).  Here, Plaintiff has failed to allege all the elements of a tort regarding maintenance or repair.  Plaintiff has not provided any factual statement regarding how an alleged duty to maintain or repair was breached, and how any such breach was both a cause in fact and legal cause of the accident.  Nowhere does the Complaint mention any acts or omissions of improper maintenance, improper repair, any obstruction on the road surface, or any other facts indicating what act or omission by the United States breached a duty to maintain or repair the road on which the accident occurred.  Here, Plaintiff has not even provided a "formulaic recitation of the elements of a cause of action" (*Iqbal*, 556 U.S. at 678) or even "facts that are merely consistent with a defendant's liability" (*Moss*, 572 F.3d at 972).  Any cause of action based on a failure to maintain or repair must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because it fails to state a claim.

Furthermore, such claims must be dismissed for failure to properly state a claim under the FTCA.  The FTCA requires a plaintiff's complaint to identify a government actor who allegedly acted negligently and this omission fails to invoke jurisdiction

DEFENDANTS' MOTION TO DISMISS - 10

under the FTCA's limited waiver of sovereign immunity. *Valadez-Lopez v. Chertoff*, 656 F.3d 851, 859 (9th Cir. 2011) ("To conclude that such a complaint stated claims sufficient to invoke the waiver of sovereign immunity would unreasonably require trial courts and defendants to piece together a theory of liability from a string of unrelated and incoherent assertions"); *Morris v. United States*, 2007 WL 1076695 (D. AZ. 2007) at *3 ("Essential to establishing jurisdiction is knowing who provided the care in order to determine if those providers were in fact 'employees' of the Government"); *Graubarth v United States ex rel. Dept. of Interior*, 2005 WL 3543763 (E.D. La. 2005) at *4 (no FTCA claim where plaintiff failed to identify a government employee); *Mathis v. United States*, 2011 WL 4352291 (D. Ariz. 2011) at *1 ("Vague and conclusory claims asserted against unnamed 'medical staff' are insufficient to state a medical malpractice claim under Rule 8(a)(2), Fed. R. Civ. P."). Plaintiff's allegations here against the United States, without more, are legally deficient. The United States has not waived sovereign immunity over such claims and this Court lacks jurisdiction over such vague and deficient claims.

## 2. *This Court Lacks Jurisdiction Over Any Claim of Improper Design.*

Plaintiff alleges that Defendant is liable because of some improper road design (which is not described in the Complaint). Because this claim also does not meet the pleading standard in *Iqbal* where the Complaint provides no factual basis to support a claim of improper design, it too should be dismissed.

However, even if the Court believes this cause of action is properly pleaded and that the United States could somehow be liable for design of a road it has not administered for almost three decades, it must be dismissed because the Court lacks jurisdiction over a claim of improper design. This includes allegations that the road should have included guardrails, barriers, and warning signs/markings, which are all design elements of a road.

DEFENDANTS' MOTION TO DISMISS - 11

Federal courts are courts of limited jurisdiction; as such, they are only empowered to hear those cases that are authorized by the Constitution and enacted statutes. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). Sovereign immunity is an important limitation on subject matter jurisdiction. *See Chadd v. United States*, 794 F.3d 1104, 1108 (9th Cir. 2015). The United States may only be sued if it has clearly waived its sovereign immunity. *Id.* The court presumes a lack of jurisdiction until the party asserting jurisdiction competently alleges and proves otherwise. *Id.* Where subject matter jurisdiction is lacking, the complaint must be dismissed. *Id.* "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009) (*citing Rattlesnake Coal v. E.P.A.*, 509 F.3d 1095, 1102 n.2 (9th Cir. 2007)). The federal government's waiver of sovereign immunity must be unequivocally expressed, will not be implied, and will be strictly construed in favor of the sovereign. *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citations omitted).

Plaintiff brings this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-80. *Compl.*, ¶ 7 (ECF No. 1). The FTCA is a limited waiver of the United States' sovereign immunity. *Chadd*, *id. at* 1108. One of the significant limits on the FTCA's waiver of sovereign immunity is the Discretionary Function Exception (DFE). *Id.* The DFE retains the United States' sovereign immunity for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). "This exception 'marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals.'" *Chadd*, *id.* at 794 (citing *U.S. v. Varig Airlines*, 467 U.S. 797, 808 (1984)). It is designed to "prevent judicial 'second-

DEFENDANTS' MOTION TO DISMISS - 12

guessing' of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort." *Id.*

Application of the exception is a threshold *jurisdictional issue* that precedes any merits or negligence analysis. *Chadd*, 794 F.3d at 1111 ("whether reasonable care required such action goes to the merits of Chadd's negligence claim, not to the question of whether Park officials had discretion . . ."). If the exception applies to the challenged government conduct, the United States retains sovereign immunity and the Court lacks subject matter jurisdiction to hear the suit. *Id.* at 1114; *see also Moon v. United States*, 2008 WL 3981986 at *1 (E.D. Wash. Aug. 22, 2008) (Shea, J.) (DFE applies to claim that National Park Service negligently inspected and failed to warn of hazardous tree); *O'Neel v. Chewelah Basin Ski Corp.*, 2016 WL 4150001 (E.D. Wa. 2016) (Mendoza, J.) (dismissing action against United States based in part on DFE following snowboard accident at ski area operating on national forest).

"The Supreme Court has established a two-step process for evaluating whether a claim falls within the discretionary function exception." *Chadd*, *id.* at 1108-09. "First, a court examines whether the government's actions are discretionary in nature, acts that involv[e] an element of judgment or choice." *Id.* (internal quotation marks omitted). "In making this examination, it is 'the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." *Id.* "If there is . . . a statute or policy directing mandatory and specific action, the inquiry comes to an end because there can be no element of discretion when an employee has no rightful option but to adhere to the directive." *Id.* (citation and internal quotations omitted). Comparatively, if there is no statute, regulation, or policy that proscribes a *specific course* of conduct or if a government official in performing a directive has *no fixed or precise standard* to follow, then discretion is involved and the Court turns to the second part of the DFE inquiry. *Id.*

DEFENDANTS' MOTION TO DISMISS - 13

The second step involves the Court determining whether the challenged conduct involves an element of judgment that is of the kind that the discretionary function exception was designed to shield. *Id.* (citing *Gaubert,* 499 U.S. at 322–23). "The exception protects only government actions and decisions based on social, economic, and political policy." *Miller v. United States,* 163 F.3d 591, 593 (9th Cir. 1998) (internal quotations omitted). Notably, the decision-giving rise to tort liability "need not be actually grounded in policy considerations, but must be, by its nature, susceptible to a policy analysis." *Id.* at 593. It is not necessary to show that a particular actor actually balanced social, economic, or political considerations for the exception to apply. *Id.*; *see also Gaubert*, 499 U.S. at 325 (The actor's conduct need only be "susceptible to policy analysis."); *Childers v. United States*, 40 F.3d 973, 974, n.1 (9th Cir. 1994) (same). The exception is also "not confined to the policy or planning level" and extends to "the actions of Government agents." *Gaubert,* 499 U.S. at 323, 325. In short, "[t]he focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* at 325.

### a. The Government's Judgment in Designing a Road Satisfies Step 1 of the DFE Analysis.

The first step of the DFE analysis is to determine whether a "statute or policy directing mandatory and specific action" required the BIA or United States to design a road that included guardrails and warning signs. *See Chadd*, 794 F.3d at 1110. If none did, then the government's design of the road necessarily involved an element of judgment or choice, and the first prong of the DFE analysis is satisfied. *Id.*

Here, there is no specified statute or policy directing how roads should be designed. *Fredenberg Declaration*, ¶ 5. The design of a road, including various features such as location, number of lanes, materials used, guardrails, barriers, striping, and signage or markings involve a substantial amount of judgment by the

DEFENDANTS' MOTION TO DISMISS - 14

engineer(s) designing a road.  Kurt Fredenberg, testified in his declaration of the various considerations that go into the design of a road.  *Fredenberg Decl.*, ¶¶ 3-4.  As the Court can see, the design of a road is a complex matter that involves numerous judgments based on environmental, engineering, social, economic, and political considerations.  In addition, the regulations (25 C.F.R. Part 170) (1990) [attached for the Court's convenience] which governed road construction and maintenance on BIA roads prior to the closing of the reservation provide only general guidance and do not specify any particular design features.  *See Attachment 1.*  Given the numerous steps in road design that involved judgment, the first step in the DFE analysis is satisfied.

### b. The Decision on Specific Road Design Elements Involves Social, Political, and Economic Judgment, Thus Satisfying Step 2 of the DFE Analysis.

The second step of the DFE analysis involves the Court determining whether the challenged conduct involves an element of judgment that is of the kind that the discretionary function exception was designed to shield.  *Id.* (citing *Gaubert,* 499 U.S. at 322–23).  The exception protects governmental actions and decisions based on consideration of public policy.  *Gaubert*, 499 U.S. at 323.  The DFE will apply if the discretionary decision made is a permissible exercise of policy judgment even if the decision is an abuse of the discretion granted.  *Soldano v. United States*, 453 F.3d 1140, 1145 (9th Cir. 2006).

Among the social, political and budgetary considerations are not only the numerous engineering aspects of a road, but the budgetary, social, and political considerations that ultimately determine where a road is located, what type of road gets build, what areas are served by the road, and what safety features are or are not included as part of the road design.  *Fredenberg Decl.*, ¶¶ 3-5; 10-11.  Here, the anticipated use of the road, including anticipated levels of traffic within a remote section of the Yakama Indian Reservation, the fact that the road is in a closed portion of the Reservation (thus limiting public access), the economics of installing guardrails,

barriers, or signage on an infrequently used road all factor into the judgment made regarding the road's design.[5]  The balancing of those various needs is exactly the type of judgment implicated in the discretionary function exception to the FTCA.

In addition, the design, construction, and maintenance of the Signal Peak Road on the Yakama Indian Reservation involves the social and political decisions of the Yakama Nation's Tribal Resolution that closed much of the Reservation.  The 1990 Tribal Resolution that closed much of the Reservation, including that segment of the Signal Peak Road on which Plaintiff's accident occurred, recites:

> • that the Yakama Indian Reservation was and is reserved by the Yakama Indian Nation for exclusive use and benefit of the Confederated Tribes and Bands of Indians;
>
> • that the United States Supreme Court has upheld the exclusive regulatory authority of the Yakama Indian Nation over the Close Area of the Yakama Indian Reservation; and
>
> • that the Closed Area of the Yakama Indian Reservation contains cultural and natural resources belonging to the Yakama Indian Nation and its members which must protected against disruption and the widespread despoliation which has taken place outside the reservation, and protected against health, welfare, fire and safety concerns, not only for people, but for the protection of the resources themselves.

*Fredenberg Decl.*, Ex. 2.

The closed nature of this portion of the Yakama Indian Reservation, with its emphasis on protecting cultural and natural resources, implicates the same type of political, social, and economic considerations that support application of the DFE in

---

[5] The Signal Peak Road was designed and built before the road was closed.  Thus, the closure limited post-closure design improvement decisions.

DEFENDANTS' MOTION TO DISMISS - 16

numerous other cases.  For example, in *Valdez v. United States*, 56 F.3d 1177 (9th Cir. 1995), a plaintiff sued the United States when he fell down the face of a waterfall in Kings Canyon National Park.  In his lawsuit, Mr. Valdez claimed the National Park Service was negligent in its design and maintenance of a trail leading to the waterfall, in failing to post adequate warning signs, in failing to install guardrails and barriers, and failing to warn the public in general.  The Ninth Circuit, in affirming the district court that had dismissed the action, held Management Guidelines mandating the Park Service to warn the public of "special hazards" necessarily encompassed an element of discretion warranting application of the DFE.  *Id.* at 1180.  The Park Service cannot possibly apprise the public of every potential danger and judgment was required to determine which hazards required an explicit warning *and which hazards spoke for themselves*. *Id.*  The Ninth Circuit continued, "the challenged conduct clearly implicates a choice between competing policy considerations of maximizing access to and preservation of natural resources versus the need to minimize potential safety hazards." *Id*.

In *Blackburn v. United States*, 100 F.3d 1426 (9th Cir. 1996), the DFE barred an action brought by a national park visitor who was rendered a quadriplegic when he dove off a bridge into a river.  *Id.* at 1428.  Plaintiff claimed the National Park Service was negligent by failing to have a warning sign advising it was dangerous to dive from the bridge.  *Id.* at 1428-29.  First, in affirming the district court, the Ninth Circuit held Park Service's safety guidelines did not impose mandatory duties of care, but instead create broad policy goals attainable only by the exercise of discretion.  *Id.* at 1430.  Second, the Court held the NPS's decisions concerning the number and type of warning signs balanced resources and visitor protection considerations and were the type of public policy decisions that the DFE is intended to immunize.  *Id.* at 1434.

In *Childers v. United States*, 40 F.3d 973, 976 (9th Cir. 1994), plaintiffs sued the United States when an 11-year old boy died in a winter hiking accident in

DEFENDANTS' MOTION TO DISMISS - 17

Yellowstone National Park.  In affirming the district court that had dismissed the action, the Court of Appeals pointed out that the Park Service was "required to balance preservation and public access, forcing it to exercise judgment and choice about what sorts of facilities and safety features, if any, to provide."  *Id.* at 974 (citation and quotations omitted).  The Court held that despite a safety manual requiring the public be "adequately warned" of hazards, the precise manner in which to carry out that policy directive was not explicitly stated, and thus, required the use of discretion which implicated the DFE.  *Id.*

In *ARA Leisure Services v. United States*, 831 F.2d 193 (9th Cir. 1987), plaintiffs sued a bus tour company after one of its buses crashed in Denali National Park.  The bus tour company then brought an action for contribution against the United States, claiming in part that the Park Service had negligently designed the road on which the bus crashed.  The Ninth Circuit held that the decision to design and construct a road without guardrails was grounded in social and political policy and thus any claim based on negligent design was barred by the discretionary function exception to the FTCA.  *Id.* at 195.

In *Kennewick Irrigation District v. United States*, 880 F.2d 1018, 1027-28 (9th Cir. 1989), the Ninth Circuit held that the decision not to line an irrigation canal with concrete was susceptible to policy analysis and dismissed a claim of negligent design based on the discretionary function exception to the FTCA.  *See also, United States v. Ure*, 225 F.2d 709 (9th Cir. 1995) (decision regarding the design of a water canal, specifically, decision not to line canal, protected by discretionary function exception); *Terbush v. United States*, 516 F.3d 1125, 1131-32 (9th Cir. 2008) (dismissing claim of negligent design of water treatment plant based on discretionary function exception); *Hazelwood v. United States*, 2006 WL 1599344 (D. Ariz. 2006) at 4-5 (design of road on Indian reservation was susceptible to political, economic, and social considerations and thus protected by the discretionary function exception to the FTCA).

DEFENDANTS' MOTION TO DISMISS - 18

1
2
3
4

In the instant case, the design of Signal Peak Road falls squarely within the cases cited above.  The Department of Interior, through the BIA, balances the need for safety, budgetary constraints with the Yakama Nation's desire to close the area in question to protect cultural and natural resources.

5

### c.    The MUTCD Does Not Apply.

6
7
8
9

Plaintiff claims, in paragraph 4.2 of the Complaint, that the BIA failed to follow the Manual on Uniform Traffic Control Devices (MUTCD) with regard to "construction, maintenance, repair, marking and signing of roadways, including those requiring guardrails, barricades, and barriers."

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

The MUTCD only governs signs, but does not govern construction, maintenance, repair or the need for guardrails, barricades, or barriers, except to recommend signage for those activities.  *Fredenberg Decl.*, ¶ 6.  Once the Yakama Nation took complete control of and closed the Signal Peak Road, the BIA had no obligation to comply with any requirements of the MUTCD on roads in the Closed Area where the BIA was no longer conducting any maintenance or construction. Furthermore, the plain language of the MUTCD indicates that signage is not mandatory, but rather, discretionary.  *Fredenberg Decl.*, ¶¶ 7-9.  The plain language in the MUTCD makes recommendations and uses words like "may" or "should," which indicate discretion.  *Id*.  Further still, the district court for the Northern District of California has said "[t]he Court is persuaded that the MUTCD does not provide the kind of mandatory regulations contemplated by the FTCA" based on the language in the MUTCD.  *Buchwald v. Metropolitan Transp. Com's*, 2005 WL 2000931 (N.D. Cal. 2005) at *4.  This language, none of it mandatory, again reinforces the discretionary nature of road design.

25
26
27

In *Soldano*, the plaintiff was injured in Yosemite National Park when he collided head-on into another vehicle on a blind curve.  That plaintiff alleged a negligent design claim, failure to maintain the road claim, and failure to post warning

28

DEFENDANTS' MOTION TO DISMISS - 19

signs.  The Ninth Circuit held that the discretionary function exception barred plaintiff's claim that the Park Service negligently designed the road by failing to install warning signs.  *Id*. at 1147-48.

In *Poullos v. United States*, 2006 WL 3050828 (N.D. Calif. 2006), the district court for the Northern District of California observed that "many Ninth Circuit cases state that a government official's decision about where to post warning signs and how to design them *is* subject to policy analysis.  *Id*. at *9 (emphasis in original) (citing *Blackburn*, *Valdez*, *Childers*); *see also Duncan v. United States*, 2006 WL 1628883 (E.D. Cal. 2006) at *8-9 (decision on whether to place warning signs and if so, the number, size, and placement are discretionary functions).

The United States need only point to *some support* in the record that its decisions were *susceptible* to policy analysis for the discretionary function to apply, regardless of whether the BIA took into consideration those policy concerns. *Gaubert,* 499 U.S. at 322–25; *Miller v. United States,* 163 F.3d 591, 593 (9th Cir. 1998) ("The decision need not be actually grounded in policy considerations, but must be, by its nature, susceptible to a policy analysis").  Here, the decisions regarding design of the road, including decisions on whether to include guardrails, barriers, or signs and markings, and consideration of the decision of the Yakama Nation to close parts of the Reservation to protect cultural and natural resources implicate policy, social, and economic considerations.  All the decisions of which Plaintiff complains fall squarely within the discretionary function exception to the Federal Tort Claims Act.  Therefore, this Court lacks subject matter jurisdiction over the claims in the Complaint, requiring dismissal of the case.

## V.  **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court dismiss Plaintiff's action *with prejudice*.

DEFENDANTS' MOTION TO DISMISS - 20

RESPECTFULLY SUBMITTED this 23rd day of May, 2017.

JOSEPH H. HARRINGTON
Acting United States Attorney

*s/Rudy J. Verschoor*
RUDY J. VERSCHOOR
Assistant United States Attorney
USAWAE.RVerschoorECF@usdoj.gov

## CERTIFICATE OF ECF SERVICE

I hereby certify under penalty of perjury that on May 23, 2017, I caused to be delivered via the method listed below the document to which this Certificate of Service is attached (plus any exhibits and/or attachments) to the following:

| NAME & ADDRESS | Method of Delivery |
|---|---|
| Favian Valencia<br>Sunlight Law, PLLC<br>402 E. Yakima Avenue, Suite 730<br>Yakima, WA  98902<br>info@sunlightlaw.com | ☒CM/ECF System<br>☐Electronic Mail<br>☐U.S. Mail<br>☐Other: _____ |

*s/Rudy J. Verschoor*
RUDY J. VERSCHOOR
Assistant United States Attorney